# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SHERWYIN ROCKE,** *individually and on behalf of all others similarly situated,* <br><br> **Plaintiff,** <br><br> -against- <br><br> **MONARCH RECOVERY MANAGEMENT, INC.,** <br><br> **Defendant.** | Civil Case Number: **1:20-cv-11736-RWZ** <br><br> _____ <br><br> **ORAL ARGUMENT REQUESTED** |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

---

MARCUS ZELMAN, LLC

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:** **(732) 695-3282**
**Fax:** **(732) 298-6256**
*Attorney for the Plaintiff*
*Sherwyin Rocke*

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT…………………………………..……..……..…..1

II.     FACTUAL BACKGROUND……………………..……………………….…..2

III.     STANDARD OF REVIEW TO BE APPLIED TO PLAINTIFF'S
       MOTION FOR SUMMARY JUDGMENT…………………..………………....…3

IV.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON
       HIS FDCPA CLAIMS…...…...……………………….................................................4

           A.   Standard Applied When Analyzing Collection Letters For
                Compliance With The FDCPA…………………………………………4

           B.   Plaintiff Has Established Each Element Of His FDCPA Claim……………5

           C.   Defendant's Collection Letter Clearly Violated The FDCPA By
                Arbitrarily Requiring Disputes To Be In Writing………………………….7

V.     CONCLUSION…………………………………………………………………13

*Bishop v. Ross Earle & Bonan, P.A.*,

817 F.3d 1268 (11th Cir. 2016)…………………………………………………………..11

*Borges ex rel. S.M.B.W. v. Serrano-Isern,*

605 F.3d 1 (1st Cir. 2010)…………………………………………………………………..3

*Brady v. Credit Recovery Co.*,

160 F.3d 64 (1st Cir. 1998)……………………………………………………………….2, 10

*Camacho v. Bridgeport Financial Inc.*,

430 F.3d 1078 (9th Cir.2005)……………………………………………………………….9, 12

*Celotex Corp. v. Catrett,*

477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)……………………………………..3

*Clark v. Absolute Collection Serv., Inc.*,

741 F.3d 487 (4th Cir. 2014)…………………………………………………………...11

*DeNovellis v. Shalala*,

124 F.3d 298 (1st Cir. 1997)……………………………………………………………….3

*Duffy v. Landberg*,

215 F.3d 871 (8th Cir.2000)……………………………………………………………….5

*Evans v. Portfolio Recovery Assocs., LLC*,

889 F.3d 337 (7th Cir. 2018)……………………………….……………………………11

*Evory v. RJM Acquisitions Funding L.L.C.*,

505 F.3d 769 (7th Cir.2007)……………………………………………………………….5

*Glowacki v. Law Offices of Howard Lee Schiff, P.C.,*

2014 WL 2547919 (D. Mass. June 5, 2014)…………………………………………………..5

*Gonzales v. Arrow Fin. Servs., LLC*,

660 F.3d 1055 (9th Cir. 2011)…………………………………………………...............5

*Hooks v. Forman, Holt, Eliades & Ravin, LLC*,

717 F.3d 282 (2d Cir. 2013)………………………………………………………………9-11

*In re Almodovar,*

2011 WL 381742 (Bankr. D.P.R. Feb. 3, 2011)………………………………………...8-9

*Lamie v. United States Trustee*,

540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)………………………………….11

*Lannan v. Levy & White,*

      186 F. Supp. 3d 77 (D. Mass. 2016)……………………………………………………..5

*Lujan v. Nat'l Wildlife Fed'n,*

      497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)……………………………….4

*Miller v. Payco–General Am. Credits, Inc.,*

      943 F.2d 482 (4th Cir.1991)……………………………………………………………4

*O'Connor v. Nantucket Bank,*

      992 F. Supp. 2d 24 (D. Mass. 2014)…………………………………………………..6

*Pettway v. Harmon Law Offices, P.C.,*

      2005 WL 2365331 (D. Mass. Sept. 27, 2005)………………………………………...5

*Pollard v. Law Office of Mandy L. Spaulding,*

      766 F.3d 98 (1st Cir. 2014)…………………………………………………………...5

*Riccio v. Sentry Credit, Inc.,*

      954 F.3d 582 (3d Cir. 2020)……………………………………………………………11

*Russello v. United States,*

      464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)…………………………………..12

*Som v. Daniels Law Offices, P.C.,*

      573 F.Supp.2d 349 (D. Mass. 2008)………………………………………………….6

*Turner v. Shenandoah Legal Grp., P.C.,*

      2006 WL 1685698 (E.D. Va. June 12, 2006)………………………………………….10

*Weiner v. Rushmore Loan Mgmt. Servs., LLC,*

      424 F. Supp. 3d 163 (D. Mass. 2019)………………………………………………….6

*Wilson v. Quadramed Corp.,*

      225 F.3d 350 (3d Cir. 2000)…………………………………………………………..4


Statutes and Other Sources

15 U.S.C. § 1692a(3)………………………………………………………………………...6

15 U.S.C. § 1692a(5)………………………………………………………………………...6

15 U.S.C. § 1692a(6)………………………………………………………………………...6

15 U.S.C. § 1692g(a)………………………………………………………………………….7

15 U.S. Code § 1692h………………………………………………………………………10

Fed. R. Civ. P. 56(c)………………………………………………………………………3

S. Rep. No. 95–382 (1977)………………………………………………………………...4

## I.     PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the Plaintiff's Partial Motion for Summary Judgment[1]. Summary judgment is plainly warranted in this action, where there are no material issues of fact to be decided, and where there is no question that the Defendant's collection efforts violated the Fair Debt Collection Practices Act.

The FDCPA requires debt collectors to include, in their initial written communications with debtors, a 'Validation Notice', explaining how to dispute the debt. *See,* 15 U.S. Code § 1692g(a)(3)-(5). This enables debtors to look at the amount of the debt, and thereby determine whether they agree that they owe the amount or whether they dispute that the amount is owed. In this case, the Defendant mailed Mr. Rocke an initial Collection Letter dated February 12, 2020, seeking to collect a credit card bill allegedly owed to First Premier Bank. *See,* Exhibit A. Unfortunately, the Defendant illegally made it more difficult for Mr. Rocke to dispute his debt, by arbitrarily adding an extra requirement that any dispute be in writing.

As this Court has already found in rejecting the Defendant's Motion for Judgment on the Pleadings, the Defendant violated the Plaintiff's rights under the Act by adding this extra hurdle of requiring that any dispute must be submitted in writing. *See*, Docket 24. Every single Circuit Court of Appeals to consider this issue – including the First Circuit – has agreed that the FDCPA is violated when a debt collector tries to impose an in-writing requirement for disputes made by

---

[1] Plaintiff solely moves for summary judgment on liability on his FDCPA claims, leaving the issue of damages to be awarded on these claims to the jury, to whom these questions are reserved. *See e.g., Kobs v. Arrow Serv. Bureau, Inc.,* 134 F.3d 893, 897 (7th Cir. 1998)("we hold that § 1692k(a)(2) of the FDCPA provides for trial by jury in determining statutory additional damages").

debtors.  *See e.g., Brady v. Credit Recovery Co.*, 160 F.3d 64, 66–67 (1st Cir. 1998).  In short, this is an open-and-shut case on liability.[2]

It is therefore respectfully submitted that there are no material issues of fact to resolve in this action, and that the Plaintiff is therefore entitled to an award of summary judgment on his claims that the Defendant's actions violated the FDCPA.

## II.     FACTUAL BACKGROUND

In February of 2020, the Plaintiff received an initial Collection Letter dated February 12, 2020 from the Defendant.  *See,* Rule 56.1 Statement of Facts, ¶1.  The Collection Letter referenced a credit card account that the Plaintiff had opened with First Premier Bank.  *See id., ¶*2.  The Collection Letter is what the Defendant calls a 'T Letter', which is Defendant's first form communication with debtors like the Plaintiff.  *See id., ¶*3.

When Plaintiff received the Collection Letter, he read the Letter in its entirety.  *See id., ¶*4. The Collection Letter advised Mr. Rocke that he owed $895.77 to First Premier Bank and that:

> Unless you notify this office **in writing** within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume that this debt is valid."

*See,* Exhibit A (emphasis added).

---

[2] *See also, Camacho v. Bridgeport Fin. Inc.*, 430 F.3d at 1082 ("Bridgeport Financial's collection notice violated § 1692g insofar as it stated that disputes must be made in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282 (2d Cir. 2013) (holding that the collection agency's in-writing requirement violated the FDCPA, because "§ 1692g(a)(3) does not impose a writing requirement"); *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 491 (4th Cir. 2014)("We find that section 1692g(a)(3) permits consumers to dispute the validity of a debt orally, and it does not impose a writing requirement"); *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) ("Consumers must take the extra step of putting a dispute in writing before claiming the more burdensome set of rights defined in § 1692g(a)(4), (a)(5) and (b)"); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018); *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020).

Mr. Rocke did not believe he owed $895.77 to First Premier Bank. *See,* Rule 56.1

Statement, ¶6. Instead, Mr. Rocke acknowledges owing *some* money to First Premier Bank, but

believes that the amount sought by First Premier Bank is inflated by several hundred dollars. *See*

*id., ¶*6, 7.

Upon receiving the Letter, Mr. Rocke would have disputed the debt over the phone, but he

did not do so, specifically because the Letter said that all disputes have to be in writing. *See id.,*

*¶*8. Mr. Rocke did not know of any other way that he could effectively dispute the debt, based on

what the Collection Letter told him. *See id., ¶*9. Mr. Rocke isn't a letter writer and didn't own

stamps or envelopes, so he ultimately just gave up on trying to dispute the debt because of this

extra hurdle imposed by the Defendant. *See id., ¶*10.

### III.   STANDARD OF REVIEW TO BE APPLIED TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

"The very mission of the summary judgment procedure is to pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*,

124 F.3d 298, 305–06 (1st Cir. 1997), citing Fed. R. Civ. P. 56(e) advisory committee's note to

1963 Amendment. Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Borges*

*ex rel. S.M.B.W. v. Serrano-Isern,* 605 F.3d 1, 4 (1st Cir. 2010).

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). Once this showing has been made, the nonmoving party must offer

specific facts contradicting those averred by the movant to establish a genuine issue of material

fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). An issue is "genuine" if the evidence of record permits a rational factfinder to resolve it in favor of either party. *Borges*, 605 F.3d at 4. A fact is "material" if its existence or nonexistence has the potential to change the outcome of the suit. *See id.,* at 5.

IV.   **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS FDCPA CLAIMS.**

A. **Standard Applied When Analyzing Collection Letters For Compliance With The FDCPA.**

Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). After determining that the existing consumer protection laws were inadequate, *id.* § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

In the same vein, Congress adopted the debt validation provisions of section 1692g to guarantee that consumers would receive adequate notice of their rights under the FDCPA. *Wilson v. Quadramed Corp.,* 225 F.3d 350, 353 (3d Cir. 2000), citing *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir.1991). Congress further desired to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N.

1695, 1699.  The rights and obligations established by section <u>15 U.S.C. § 1692g</u> were considered by the Senate at the time of passage of the FDCPA to be a "significant feature" of the Act. *See* 1977 U.S.C.C.A.N. 1695, 1696.

Because the FDCPA is a remedial statute with a strict liability framework, its language is construed broadly and liberally so as to effect its purpose.  *Lannan v. Levy & White,* <u>186 F. Supp. 3d 77, 91</u> (D. Mass. 2016); *Pettway v. Harmon Law Offices, P.C.,* <u>2005 WL 2365331</u>, at *3 (D. Mass. Sept. 27, 2005); *Glowacki v. Law Offices of Howard Lee Schiff, P.C.,* <u>2014 WL 2547919</u>, at *2 (D. Mass. June 5, 2014).  Accordingly, in the First Circuit, communications from lenders to debtors are analyzed from the perspective of the "least sophisticated debtor."  *Pollard v. Law Office of Mandy L. Spaulding,* <u>766 F.3d 98, 103</u> (1st Cir. 2014).

The purpose of the 'least sophisticated debtor' standard is to protect "all consumers, including the inexperienced, the untrained and the credulous."  *Pollard,* <u>766 F.3d at 103</u>.  This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor."  *Gonzales v. Arrow Fin. Servs., LLC*, <u>660 F.3d 1055, 1061</u> (9th Cir. 2011).  The standard is "designed to protect consumers of below average sophistication or intelligence," or those who are "uninformed or naive," particularly when those individuals are targeted by debt collectors.  *Duffy v. Landberg*, <u>215 F.3d 871, 874</u>–75 (8th Cir.2000); *Evory v. RJM Acquisitions Funding L.L.C.*, <u>505 F.3d 769, 774</u> (7th Cir.2007) (cautioning that "if the debt collector has targeted a particularly vulnerable group," "the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of that group").

## B.  Plaintiff Has Established Each Element Of His FDCPA Claim.

To establish a claim under the FDCPA, a plaintiff must show "(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by

the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." *Weiner v. Rushmore Loan Mgmt. Servs., LLC*, 424 F. Supp. 3d 163, 167 (D. Mass. 2019), <u>citing</u> *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014); *Som v. Daniels Law Offices, P.C.*, 573 F.Supp.2d 349, 356 (D. Mass. 2008).

There is no dispute regarding the first two of these elements. The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 USC § 1692a(3). The Plaintiff is clearly a natural person, and as evidenced by the collection efforts of the Defendant, is allegedly obligated to pay a debt owing to First Premier Bank. *See,* Exhibit A. The Defendant has further admitted that the Plaintiff is a consumer, as that term is defined by the statute. *See,* Rule 56.1 Statement of Facts, ¶12.

Similarly, the FDCPA defines "debt," to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 USC § 1692a(5). In this action, the debt at issue consists of charges made on the Plaintiff's First Premier Bank credit card - which the Plaintiff solely opened and used for personal and household purposes - such as to pay for gas and food. *See,* Rule 56 Statement of Facts, ¶11. Clearly credit card debt incurred to pay for gas and food is the quintessential type of consumer debt encompassed by the statute.

Finally, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6). The Defendant has admitted that

it is a debt collector as defined by the statute, and that it regularly collects, or attempts to collect, consumer debts that are owed to its clients. *See,* Rule 56.1 Statement of Facts, ¶13, 14.

### C. Defendant's Collection Letter Clearly Violated The FDCPA By Arbitrarily Requiring Disputes To Be In Writing.

As set forth in the previous section, the only question to be resolved in this action is whether the Defendant's Collection Letter violated the FDCPA. And as this Court already found in its April 20, 2021 Order denying the Defendant's Motion for Judgment on the Pleadings, it is clear that the Defendant's Collection Letter facially failed to comply with the plain language of the FDCPA. The Plaintiff's claim arises under 15 U.S.C. § 1692g(a)(3). That section of the FDCPA provides, in relevant part:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

> (3) A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt-collector;

> (4) A statement that the consumer notifies the debt collector <u>in writing</u> within thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

> (5) a statement that, upon the consumer's <u>written</u> request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*See,* 15 U.S.C. § 1692g(a)(3)-(5).

In this action, the Defendant's Validation Notice simply did not comply with the plain language of the statute. As the plain language of the FDCPA reflects, a debtor's request for verification of a debt under Section 1692g(a)(4) or the debtor's request for the creditor's contact

information under 1692g(a)(5) must be in writing, <u>a requirement that is purposely absent for</u> <u>general disputes under 1692g(a)(3)</u>.  The Defendant nevertheless decided to tack on the additional requirement that <u>any</u> disputes the Plaintiff wished to make must be in writing, in clear contravention of Section 1692g(a)(3).   That additional requirement is not disputed by the Defendant, and is clearly reflected by in the Defendant's Collection Letter, which reads:

> "Unless you notify this office <u>in writing</u> within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume that this debt is valid."

> *See,* Exhibit A (emphasis added).

By arbitrarily requiring that debtors must reduce their dispute in writing, Defendant throws up a roadblock in the dispute process and makes it harder for debtors to exercise their dispute rights under the FDCPA.  The FDCPA clearly gives debtors a choice: to dispute their debt orally, or to make a written request for documentation.  In its Letter, the Defendant took away that choice and gives Mr. Rocke only one option, if he wished to dispute his debt: either dispute the debt in writing, or nothing.

This is not semantics or an exercise in sophistry.  A debtor may very well have a valid dispute, but not have the time, energy or ability to reduce that dispute to writing, and to mail it in to the debt collector.  That same debtor, however, almost certainly has a cellular phone in this day and age[3], and can easily call the debt collector and notify it of the dispute.  Since the Defendant's Collection Letter only allows for disputes to be submitted in writing, however, the least sophisticated debtor could thus be easily dissuaded by this additional hurdle into foregoing his rights to dispute the debt altogether.  *See e.g., In re Almodovar,* <u>2011 WL 381742</u> (Bankr. D.P.R.

---

[3] *See e.g., Riley v. California,* <u>134 S. Ct. 2473, 2484</u> (2014)("Modern cell phones...are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy").

Feb. 3, 2011)("This Court agrees that the absence of a writing requirement in 15 U.S.C. § 1692g(a)(3), and the presence of a writing requirement in the two subsequent subsections, indicates that Congress intended to give consumers the right to dispute debts orally. Such a scheme seems not only coherent, but progressive, and perhaps intended to benefit undereducated or handicapped consumers who are unable to communicate in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013)("The right to dispute a debt is the most fundamental of those set forth in § 1692g(a), and it was reasonable to ensure that it could be exercised by consumer debtors who may have some difficulty with making a timely written challenge").

Indeed, **that is exactly what happened in this case**. Mr. Rocke acknowledged that he missed some payments on his account, and that he owes *some* money to First Premier Bank. *See,* Exhibit B, 12:19 – 24; 13:3-10. He believes the amount actually owed is more like $600, rather that the nearly $900 that Defendant was seeking. *See id.,* 13:3-10. He therefore wished to dispute the debt, but – like the classic millennial that he is - he isn't the type of person who keeps stamps or envelopes around, since he doesn't typically write letters. *See,* Rule 56.1 Statement of Facts, ¶10. Based on the letter, he believed that the only way to dispute the debt was in writing, via the mail. *See id.,* ¶7-8. Ultimately, he just gave up on disputing the debt because of this additional hurdle created by the Defendant. *See id.*

By taking away the option to dispute a debt orally or over the phone, the Defendant deprived Mr. Rocke of a series of protections provided by the statute. The FDCPA provides certain rights to debtors who dispute their debt without committing that dispute to writing. The FDCPA also provides much stronger and broader protections to consumers who dispute their debt in writing. *See, Camacho v. Bridgeport Financial Inc.*, 430 F.3d 1078, 1082 (9th Cir.2005) (the

FDCPA "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing.").

The Second Circuit has explained that "debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing." *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013). Rights that are triggered through an <u>oral</u> dispute, for example, include having a consumer's payments applied to the undisputed portion of their debts, in accordance with § 1692h. In other words, if Mr. Rocke orally disputed his debt, he could've then paid off the portion which he wasn't disputing, rather than having his payment allocated towards reducing the overall lump sum sought by the Defendant.

Similarly, by orally disputing the debt, Mr. Rocke would be entitled to have the fact of the dispute reported whenever the debt collector communicates with others (such as the credit reporting agencies) about the debt, in accordance with § 1692e(8). *See id.* Rights that are triggered through a <u>written</u> dispute include a right to written validation of the debt, and a freeze on all collection activities until the subject debt is validated. *See id.; see also, Brady v. Credit Recovery Co.,* 160 F.3d 64, 67 (1st Cir.1998)(Concluding that an oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute); *Turner v. Shenandoah Legal Grp., P.C.*, 2006 WL 1685698, at \*4 (E.D. Va. June 12, 2006)(outlining the sorts of rights available under the FDCPA to debtors who dispute their debt orally).

As this Court correctly noted in denying the Defendant's Motion for Judgment on the Pleadings, the Second, Third, Fourth, Seventh, Ninth and Eleventh Circuits have all concluded that a collection agency violates the FDCPA by requiring disputes under Section 1692a(3) to be in

writing. *See, Camacho v. Bridgeport Fin. Inc.*, <u>430 F.3d at 1082</u> ("Bridgeport Financial's collection notice violated § 1692g insofar as it stated that disputes must be made in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, <u>717 F.3d at 286</u> (holding that the collection agency's in-writing requirement violated the FDCPA, because "§ 1692g(a)(3) does not impose a writing requirement"); *Clark v. Absolute Collection Serv., Inc.*, <u>741 F.3d 487, 491</u> (4th Cir. 2014)("We find that section 1692g(a)(3) permits consumers to dispute the validity of a debt orally, and it does not impose a writing requirement"); *Bishop v. Ross Earle & Bonan, P.A.*, <u>817 F.3d 1268, 1274</u> (11th Cir. 2016) ("Consumers must take the extra step of putting a dispute in writing before claiming the more burdensome set of rights defined in § 1692g(a)(4), (a)(5) and (b)"); *Evans v. Portfolio Recovery Assocs., LLC*, <u>889 F.3d 337, 348</u> (7th Cir. 2018)(Given the much more limited effect of § 1692e(8), plaintiffs need not adhere to as many requirements to raise a dispute"); *Riccio v. Sentry Credit, Inc.*, <u>954 F.3d 582</u> (3d Cir. 2020).

The holdings of *Graziano, Riccio, Hooks, Camacho, Clark, Bishop* and *Evans* are sound, because they comport with (1) the plain language of the statute, (2) the statutory framework as a whole, and (3) the remedial intent of the FDCPA. The Supreme Court has established that a court's inquiry should start with the plain language of the statute, and end there if the statute is unambiguous. *See*, *Lamie v. United States Trustee*, <u>540 U.S. 526</u>, <u>124 S.Ct. 1023</u>, <u>157 L.Ed.2d 1024</u> (2004). "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* at 534 (internal quotation marks and citations omitted). Applying that direction, the Ninth Circuit found that "the plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute." *Camacho v. Bridgeport Fin. Inc.,* <u>430 F.3d at</u>

11

1081.  Similarly, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).  "If Congress had intended to impose a writing requirement in § 1692g(a)(3), it could have done so in the subsection itself, as it did in the later subsections of § 1692g(a)."  *Camacho,* supra at 1081; *Russello,* 464 U.S. at 23, 104 S.Ct. 296.

The plain language of the text of § 1692g(a)(3) makes clear that no such writing requirement was contemplated, and thus the statute must be enforced as written, because "the disposition required by the text is not absurd."  *Camacho,* supra at 1081, citing *Lamie,* 540 U.S. at 534, 124 S.Ct. 1023.  Indeed, it makes sense that a debtor can trigger one set of rights with an oral dispute, and a more substantive set of rights with a written dispute.  As explained by the Second Circuit in *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d at 286:

> The rights defined by §§ 1692h and 1692e(8) place less of a burden on debt collectors than the rights defined by § 1692g(a)(4), (a)(5) and (b). Sections 1692g(a)(4) and (a)(5) call for affirmative steps on the part of the debt collector, and § 1692g(b) requires the debt collector to "cease collection of the debt" unless it complies with several conditions that relate to verifying the debt or judgment in question. 'Section 1692g(b) thus confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities.' *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir.1998). It therefore makes sense to require debtor consumers to take the extra step of putting a dispute in writing before claiming the more burdensome set of rights defined in § 1692g(a)(4), (a)(5) and (b). This is certainly not the type of patently unreasonable policy that could cause us not to apply the straightforward language of the statute.

As explained above, there is a reason setting a lower bar for general disputes, and a higher bar for disputes which require the collection agencies to gather and provide documentation to debtors.  While an oral dispute will entitle a debtor to *some* protections, those debtors that take the extra step of writing out and mailing their disputes will receive greater protections.

In sum, the FDCPA conspicuously does not contain an in-writing requirement in Section 1692g(a)(3), despite expressly having such a requirement in Sections 1692g(a)(4) and (a)(5). Nonetheless, the Defendant inserted one anyway, thereby making it more difficult for everyday consumers like Mr. Rocke to dispute their debts. This is flatly illegal, and contravenes both the plain language and the consumer protection intent of the FDCPA. And since there is no question that the FDCPA was violated here, there are no questions on liability that a jury needs to decide at trial, making summary judgment in Mr. Rocke's favor plainly warranted.

## V. CONCLUSION

It is therefore respectfully submitted that the Plaintiff's motion for summary judgment on his claims pursuant to the FDCPA should be granted in its entirety. In its Collection Letter to the Plaintiff, the Defendant was required to let Mr. Rocke know how he could go about disputing his debt. This is not something particularly difficult or onerous – in Section 1692g of the FDCPA, Congress expressly spelled out what the Validation Notice should include. Nonetheless, Defendant decided to make it more difficult for Mr. Rocke – and the hundreds of similarly situated individuals to whom it sent this same Letter - to exercise his right to dispute the debt, and to impose an added hurdle of an in-writing requirement. Under these facts, the Plaintiff's FDCPA rights have been violated, and the Plaintiff is therefore entitled to a grant of summary judgment.

It is therefore respectfully requested that the Plaintiff's Motion for Summary Judgment be granted in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: March 15, 2022

MARCUS & ZELMAN, LLC

By:__ /s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
Marcus Zelman, LLC.

701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:      (732) 695-3282
*Attorney for Plaintiff Sherwyin Rocke*