EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF MASSACHUSETTS


SHERWYN ROCKE,           : CIVIL ACTION
Individually and on      :
behalf of all others     :
similarly situated,      :
          Plaintiff      :
                         :
     vs                  :
                         :
MONARCH RECOVERY         :
MANAGEMENT, INC.,        :
          Defendant      : NO. NO. 1:20-CV-11736-RWZ



     Videoconference deposition of SHERWYN ROCKE,

at 100 Woodrow Avenue, Dorchester, Massachusetts

02124, on Tuesday, August 17, 2021, beginning at

1:59 p.m., before Stacy L. Rosar, Court Reporter

and Notary Public in and for the Commonwealth of

Pennsylvania.




               Stacy L. Rosar, Court Reporter
                    105 Summit Drive
               Honesdale, Pennsylvania 18431
                  Mobile (570) 357.5236
                  Stacy715@gmail.com

Deposition of Sherwyn Rocke

A P P E A R A N C E S:

> YITCHAK ZELMAN, ESQUIRE
> (VIA ZOOM)
> MARCUS & ZELMAN, LLC
> 701 Crookman Avenue, Suite 300
> Asbury Park, New Jersey 07712
> Yzelman@marcuszelman.com
>
> -- Representing the Plaintiff
>
> RONALD M. METCHO, ESQUIRE
> (VIA ZOOM)
> MARGOLIS EDELSTEIN
> 220 Penn Avenue, Suite 305
> Scranton, Pennsylvania 18503
> Metcho@margolisedelstein.com
>
> -- Representing the Defendant

```
 1                         I N D E X

 2

 3    WITNESS:  Sherwyn Rocke

 4    QUESTIONED BY:                    PAGE

 5        Mr. Metcho                      4

 6

 7

 8                    E X H I B I T S

 9
                                              MARKED
10    NUMBER       DESCRIPTION                FOR ID

11    A            Collection letter
                   February 12, 2020             9
12
      B            Complaint                     20
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Sherwyn Rocke

```
 1                    (It is hereby stipulated and agreed by
 2          and between counsel for the respective parties
 3          that signing, sealing, certification, and
 4          filing are waived and that all objections,
 5          except as to the form of the question, are
 6          reserved until the time of trial.)
 7                         SHERWYN ROCKE,
 8            having been first duly sworn, was
 9            examined and testified as follows:
10                       EXAMINATION
11   BY MR. METCHO:
12        Q.       Good afternoon, Mr. Rocke.  My name is
13   Ron Metcho.  I'm a partner in the Scranton,
14   Pennsylvania office of Margolis Edelstein.  And I'm
15   representing Monarch Recovery Management in the
16   lawsuit filed in the United States District Court
17   for the District of Massachusetts.  Thanks very
18   much for being here today.  Hopefully I won't take
19   up too much of your time.  And we're just going to
20   go through your deposition today.  So have you ever
21   been deposed before?
22        A.       No.
23        Q.       Okay.  So a deposition is simply a
24   question-and-answer session, okay.  I'm going to
25   ask questions about yourself, your background,
```

1    about the letter that's at issue, about the

2    allegations in your complaint, and some questions

3    surrounding the allegation.  And then we'll have

4    you on your way today, okay?

5        A.    Okay.

6        Q.    Do you understand that you've been

7    placed under oath?

8        A.    Yes.

9        Q.    Okay.  Because we're taking this

10   deposition today via Zoom and that we're all in

11   different locations, just make sure that you hear

12   the entire question that I ask before answering.

13   Give your counsel an opportunity to object before

14   answering, okay.  And please responds "yes" or "no"

15   to questions that require a yes or no answer

16   instead of shaking your head or "um-hmm," things

17   like that, so we have a clear record from the court

18   reporter.  Is there anyone in the room with you

19   today?

20       A.    No.

21       Q.    Okay.  And also please refrain from

22   recording today's deposition with a cell phone or

23   other type of recording device, okay?

24       A.    Yes.

25       Q.    Okay.  Are you taking any medication or

Deposition of Sherwyn Rocke              Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1   suffering from any conditions that will prevent you
 2   from answering truthfully or accurately today?
 3        A.      No.
 4        Q.      Okay.  Where are you specifically
 5   located today, Mr. Rocke?
 6        A.      At home.
 7        Q.      And what is that address?
 8        A.      ███████████  Dorchester, Mass.
 9        Q.      Okay, very good.  Let's get started.
10   Can you please state your full name for the record?
11        A.      Sherwyn Rocke.
12        Q.      Have you ever gone by any other names?
13        A.      No, sir.
14        Q.      Okay.  Again, just for the record, can
15   you please state your current address -- full
16   address?
17        A.      ███████████  Dorchester, Mass
18   02124.
19        Q.      How long have you lived there?
20        A.      About 7 years.
21        Q.      Who lives there with you?
22        A.      I live alone.
23        Q.      Okay.  Is it a home or an apartment?
24        A.      It's an apartment.
25        Q.      Okay.  And do you rent?
```

```
 1        A.      Yes.

 2        Q.      Okay.  Where did you live prior to

 3   living at the address at ███████████?

 4        A.      I lived in Stoughton, Mass.

 5        Q.      Okay.  How long did you live there for?

 6        A.      About six months.

 7        Q.      Okay.  Currently married?

 8        A.      No.

 9        Q.      Have you ever been married?

10        A.      No.

11        Q.      Do you have any children?

12        A.      Yes.

13        Q.      How many children do you have?

14        A.      One.

15        Q.      Okay.  Child's name, please?

16        A.      Sherwyn Samuel, Jr.  Sorry.  Sherwyn

17   Rocke, Jr.

18        Q.      And his age, please?

19        A.      Seven.

20        Q.      And he does not live with you, correct?

21        A.      He's -- his mom is the primary parent.

22   He's here from time to time.

23        Q.      Okay.  Have you had any roommates over

24   the past two years?

25        A.      No.
```

Deposition of Sherwyn Rocke                 Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1        Q.        What's your current residential

 2   telephone number?

 3        A.        I do not have a residential telephone.

 4        Q.        Do you have a cell phone number?

 5        A.        Yes.

 6        Q.        And what's that number?

 7        A.        ██████████6970.

 8        Q.        Do you share that telephone number with

 9   any individuals?

10        A.        I do not, no.

11        Q.        Could you describe your educational

12   background for me, please?

13        A.        Currently completing college.

14        Q.        That's great.  Where do you go to

15   college?

16        A.        Mass Bay.

17        Q.        And what are you studying?

18        A.        Business administration.

19        Q.        Are you currently employed while you're

20   going to school?

21        A.        Yes.

22        Q.        And where are you employed?

23        A.        Mass General Brigham.

24        Q.        And what is your employment position?

25        A.        Business manager.
```

Deposition of Sherwyn Rocke                Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1        Q.       How long have you been working in that
 2   position?
 3        A.       About 15 years.
 4        Q.       Okay.  What's your date of birth,
 5   Mr. Rocke?
 6        A.       ████81.
 7        Q.       Have you ever filed for personal
 8   bankruptcy?
 9        A.       No.
10        Q.       All right.  Let's talk about -- I'm
11   going to ask -- did your counsel provide you with
12   exhibits to look at prior to today's deposition?
13        A.       Yes.
14        Q.       About five separate documents?  Okay.
15   What I'd like you to do is, first, take a look at
16   this exhibit which is the February 12, 2020, letter
17   at issue?
18             MR. METCHO:  Stacy, we can mark that as
19        Exhibit A.
20             (Whereupon, Exhibit A was marked for
21        identification.)
22   BY MR. METCHO:
23        Q.       Do you have the letter in front of you,
24   Mr. Rocke?
25             MR. ZELMAN:  I think there were two
```

Deposition of Sherwyn Rocke

```
1          letters in that file you sent over.
2               MR. METCHO:  Okay.  I think just the
3          February 12, 2020, letter.
4     BY MR. METCHO:
5          Q.     Do you see that?
6          A.     I'll pull it up, sorry.
7          Q.     It's okay.
8               MR. ZELMAN:  Yeah.  Our two are back to
9          back, Ron.  This one has, like, a redaction on
10         it and one doesn't.
11              MR. METCHO:  Let's see.
12              THE WITNESS:  Yeah, okay.
13              MR. METCHO:  Let's keep scrolling down.
14         Keep going.
15              MR. ZELMAN:  It's 14 and 15.
16              MR. METCHO:  Right after the complaint
17         there.  Right.
18              MR. ZELMAN:  Yeah.
19              MR. METCHO:  I want to keep scrolling
20         down.  That's fine.  We'll use that one.
21         That's perfectly fine.
22              MR. ZELMAN:  Okay.  You can leave that
23         there.
24    BY MR. METCHO:
25         Q.     Mr. Rocke, do you recognize this
```

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1   particular letter?

 2        A.      I do, yes.

 3        Q.      Okay.  Can you tell me who the creditor

 4   listed in the letter is?

 5        A.      First Premier Bank.

 6        Q.      Do you recall owing a debt to First

 7   Premier Bank?

 8        A.      Yes.

 9        Q.      When did you open the account?

10        A.      I don't remember the date.

11        Q.      Do you remember approximately when it

12   was?

13        A.      I -- I don't.

14        Q.      Okay.  Was this account related to a

15   credit card?

16        A.      Yes.

17        Q.      Do you still have the -- is the account

18   still open?

19        A.      It is not, no.

20        Q.      Did you make purchases with this

21   account?

22        A.      Yes.

23        Q.      What types of things did you purchase

24   with this account?

25        A.      Just things like gas, food.  Things
```

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1   like that.
 2        Q.     Did you use it for any business
 3   purposes?
 4        A.     No.
 5        Q.     When was the last time you made a
 6   purchase with the account?
 7        A.     I don't remember.
 8        Q.     Do you remember the first time that you
 9   used the account?
10        A.     I don't.
11        Q.     Do you have an approximate time of how
12   long the account was open?
13        A.     I'd say a couple of years.  I don't
14   remember.
15        Q.     Okay.  Do you remember the last time
16   you made a payment towards the owed balance on the
17   account?
18        A.     I -- I don't remember.
19        Q.     Can you tell me why you became
20   delinquent in your payments toward the account?
21        A.     The -- don't -- well, I was going
22   through -- I just missed, you know, some payments.
23   I don't recall at the time.  That was several years
24   back.
25        Q.     Did anyone other than you use the First
```

Deposition of Sherwyn Rocke

1    Premier Bank account?

2        A.      No.

3        Q.      Does the balance listed of $895.77,

4    does that seem accurate?

5        A.      It does not, no.

6        Q.      How much do you believe that you owe?

7        A.      I would say around 600.

8        Q.      Why do you think there's a discrepancy?

9        A.      I just don't believe that's the correct

10   amount.

11       Q.      Okay, okay.  You mentioned that you

12   recognize the letter.  Can you describe this letter

13   for me?  Why was it sent to you?

14       A.      This was sent to me for a balance owed.

15       Q.      Who sent you the letter?

16       A.      Monarch Recovery.

17       Q.      Okay.  Did you receive this letter?

18       A.      I did.

19       Q.      When did you receive it?  What was the

20   specific date?

21       A.      I don't remember the specific date.

22       Q.      Do you remember approximately when you

23   received it?

24       A.      Let me see.  Sometime after February

25   12th.  Between that and, like, the end of February.

1    Between then.

2         Q.      But you don't remember the specific

3    date in which it was received?

4         A.      Not the specific date, no.

5         Q.      Did you open the letter, or did someone

6    else open the letter?

7         A.      I opened the letter.

8         Q.      Okay.  Did you read the letter when you

9    opened it?

10        A.      Yes.

11        Q.      Did you read the letter in its

12   entirety?

13        A.      Yes.

14        Q.      What specific date did you read the

15   letter on?

16        A.      I don't recall the exact date.

17        Q.      Do you have an approximate date?

18        A.      Sometime after February 12th, like, to

19   late February.

20        Q.      You testified that you read the letter.

21   Explain to me in your own words what is this letter

22   about?  What does it pertain to?

23        A.      It's, like, a collection letter

24   regarding a balance owed.

25        Q.      Was this the first letter you ever

1   received from a collection entity such as Monarch?

2        **A.**     Yeah, I believe.  Yeah.

3        **Q.**     Have you ever received collection

4   letters from collection entities other than

5   Monarch?

6        **A.**     Once before -- well, not Monarch.

7   Sorry.  Not Monarch.

8        **Q.**     A different company?

9        **A.**     Yeah.

10        **Q.**     Do you recall the name of the company?

11        **A.**     I do not.

12        **Q.**     Okay.  About how long ago was that?

13        **A.**     That was -- that was a while ago.

14        **Q.**     Okay.  I should have asked this

15   earlier, is this the only lawsuit that you filed in

16   regard to debt collection?

17        **A.**     Yes.

18        **Q.**     Okay, all right.  So let's take a look

19   -- a little closer look at this letter.  The

20   paragraph that I want to focus is in the body of

21   the letter.  It's the third paragraph that begins

22   with "Unless you notify."  Can you just read that

23   paragraph to yourself and let me know when you're

24   finished?

25        **A.**     I'll just read the whole paragraph?

Deposition of Sherwyn Rocke

1    Q.    Yeah.  Just read it to yourself and let

2    me know when you're done.

3    A.    "Unless you notify this office in

4    writing within 30 days after receiving this notice,

5    you dispute the validity of this debt or any

6    portion thereof, this office will assume that this

7    debt is valid.  If you notify this office in

8    writing within 30 days from receipt of this notice,

9    that the debt or any portion thereof is disputed,

10   this office will obtain verification of the debt or

11   a copy of the judgment against the consumer and a

12   copy of such verification or judgment and mail it

13   to you.  If you request of this office in writing

14   within 30 days of after receiving this notice, this

15   office will provide you with the name and address

16   of the original creditor if different from the

17   current creditor."

18   Q.    Okay.  In your own words, what does

19   that paragraph mean to you?

20   A.    Just how to -- if I had to notify

21   Monarch in writing within 30 days after receiving

22   the notice.

23   Q.    Okay.  When you testified that you

24   received and read this letter -- upon receipt and

25   reading this letter, did you understand that you

1    were given the opportunity to dispute the debt

2    through the letter?

3        A.      Yes.

4        Q.      Okay.  Did you, in fact, dispute the

5    debt with Monarch?

6        A.      I did not dispute the debt.

7        Q.      Why not?

8        A.      Because it only said I can do it in

9    writing.

10       Q.      Okay.  Did you give them a telephone

11   call to let them know that you were disputing the

12   debt?

13       A.      I did not.  It only just said in

14   writing.

15       Q.      Why didn't you dispute it in writing?

16       A.      I just, you know, didn't dispute it in

17   writing, you know.  Had I known, you know, I would

18   have just, you know, given them a call.  Had I

19   known I could call, I would have, you know, given

20   them a call.

21       Q.      Okay.  I guess my question is, what

22   kept you from writing a letter, writing a note,

23   sending a postcard to Monarch to dispute the debt

24   after having testified that you believe the balance

25   sought in the letter is greater than what was owed?

Deposition of Sherwyn Rocke

1      A.      I just -- you know, they only gave me

2  the option to write, you know, to them.

3      Q.      Okay.  And my question is, again, sorry

4  to be repetitive, but why didn't you write to

5  dispute the debt?

6      A.      That was the only -- you know, I didn't

7  write to them because I just -- you know, that was

8  the only option that they gave me.  I wanted -- you

9  know, I just felt like it's -- that wasn't -- that

10  was the only option they gave me.

11     Q.      Okay.  If you scroll down in the

12  letter, and, again, did you place any telephone

13  calls to Monarch to dispute the debt?

14     A.      I did not.

15             MR. METCHO:  Can we scroll down the

16         letter a bit, please?  Keep going, please.

17             (Whereupon, a discussion was held off

18         the record.)

19  BY MR. METCHO:

20     Q.      Right there is fine, thank you.

21  Mr. Rocke, you testified that you received and read

22  the letter, right?

23     A.      Yes.

24     Q.      Looking at the bar in the middle, what

25  does -- what information is provided in that bar?

1    It says online scan, by telephone?

2         A.      Online scan, by phone, live agent.

3         Q.      Okay.  So in your own words, what do --

4    what do these options provide you with?

5         A.      It looks to me that if you wanted to

6    make a payment, these are the options.

7         Q.      Okay.  Did you place any telephone

8    calls at any time to Monarch?

9         A.      I did not.

10        Q.      Can --

11               MR. METCHO:  Suzanne -- no that's okay.

12        Actually, can we scroll up on this letter?

13        Keep going.  Okay.  Down, please, I'm sorry.

14               MR. ZELMAN:  Ron, can't you control it?

15               MR. METCHO:  That's what I would like

16        to do.

17               MR. ZELMAN:  I always just share my own

18        screen and then I just control my on screen.

19               (Whereupon, a discussion was held off

20        the record.)

21   BY MR. METCHO:

22        Q.      One last question regarding this

23   letter, Mr. Rocke.  Your address on this letter at

24   the bottom left, is this the correct address of

25   where you were living as of February 12, 2020?

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1      A.      Yes.

 2      Q.      Okay.  What I'd like to do now is go

 3 through some of the allegations in your complaint

 4 against Monarch.  So I'm going to ask you to take a

 5 look at what we're going to mark as Exhibit B?

 6              (Whereupon, Exhibit B was marked for

 7      identification.)

 8 BY MR. METCHO:

 9      Q.      Mr. Rocke, do you recognize this

10 document?

11      A.      Yes.

12      Q.      And what is it?

13      A.      Class action complaint.

14      Q.      When was the last time you saw this

15 complaint?

16      A.      Recently.

17      Q.      Within the past day, the past week?

18      A.      Yeah.  Past week, yeah.

19      Q.      Okay.  When did you determine that you

20 wanted to file a complaint against Monarch?

21      A.      When I received the letter, I didn't

22 think the -- sorry.  What was -- can you repeat the

23 question?

24      Q.      Sure.  When did you first determine

25 that you wanted to file a lawsuit against Monarch?
```

Deposition of Sherwyn Rocke

1     A.      When I noticed that the balance was
2  higher than expected, you know.
3     Q.      Okay.  And one of the things I should
4  have mentioned earlier, Mr. Rocke, is that any
5  question that I ask you that may pertain to your
6  communications with your attorney, Mr. Zelman or
7  Mr. Crick, they're protected by the attorney/client
8  privilege.  So I don't -- I'm not privy to those
9  conversations.  I'm sure -- if any of that
10 information comes up, I'm sure Mr. Zelman will
11 object.  Let's just make sure that information
12 stays between you and your attorneys and is not
13 divulged to any other parties, okay?
14    A.      Okay.
15    Q.      So you determined you wanted to file a
16 complaint because the balance was not correct,
17 right?
18    A.      Yes.
19    Q.      Did your determination to file a
20 complaint have anything to do with the ability to
21 dispute the debt?
22    A.      Yes.
23    Q.      And what was that?
24    A.      I was told that I could only do it in
25 writing.

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

1      Q.      Okay.  Did you know any -- of any other

2  way that you would possibly dispute the debt?

3      A.      No.  It just only gave me the option to

4  -- you know, in writing.

5      Q.      What do you think would happen if you

6  called them and disputed the debt?  And by "them,"

7  I mean Monarch?

8      A.      Monarch, yeah.  They didn't tell me I

9  can.

10     Q.      I'm just -- let's see, okay.  Scroll

11  down --

12     A.      Is it too early for a break?  Like a

13  water break?

14     Q.      No.  You can take a break.  You want to

15  take a five-minute break?

16             (Whereupon, a recess was taken from

17             2:24 p.m. until 2:30 p.m.)

18  BY MR. METCHO:

19     Q.      We're back on the record.  Let's take a

20  look at some of the paragraphs in your complaint

21  there.  So you already testified, but just for

22  clarification.  In Paragraph 20, do you remember

23  the specific date in which you received and read

24  the February 12, 2020, letter?

25     A.      It was about, like, sometime at the

Deposition of Sherwyn Rocke

1  end, just like it says there.  Just sometime after

2  February 12th.  I don't have an exact date.

3       Q.     All right.  Paragraph 25, "Defendant

4  confused and misled the plaintiff by stating the

5  notification of dispute must be in writing."  Tell

6  me specifically how you were confused by the

7  February 12, 2020, letter.

8       A.     I'm confused -- just -- you know.  As I

9  mentioned, you know, it said I can only dispute it

10 in writing.

11      Q.     So how did that confuse you?

12      A.     I mean, that was literally the only

13 option that they -- that they gave.

14      Q.     But you didn't dispute it in writing,

15 right?

16      A.     I did not.

17      Q.     So why were you confused?

18      A.     I -- had I known I could dispute it

19 over the phone, I would have called or, you know, I

20 don't -- yeah.  That just was literally the only

21 option they gave.  I don't have stamps or mail

22 letters and stuff like that.  It's just --

23      Q.     I guess that was my next question.

24 What kept you from disputing the debt in writing?

25      A.     I just -- just couldn't -- like I said,

Deposition of Sherwyn Rocke

Sherwyn Rocke v Monarch Recovery Management, Inc

1    the only option that they gave.

2         Q.     That's not really answering my

3    question.  I'm -- the question is, why didn't you

4    dispute it in writing?

5         A.     I mean, I don't have -- you know, I

6    don't write let- -- you know.  It's -- I don't have

7    stamps and stuff like that.  I just -- I would --

8    didn't give me an option to call or any other --

9    literally the only thing, you know, they gave me as

10   far as an option was to, you know, do it in

11   writing.

12        Q.     Back to Paragraph 25.  How were you

13   misled by the letter?

14             MR. ZELMAN:  Objection.  Asked and

15        answered.

16   BY MR. METCHO:

17        Q.     You can answer if you're able.

18             MR. ZELMAN:  You can answer.

19             THE WITNESS:  Yeah.  Just misled by the

20        letter.  They literally only gave me the option

21        to -- to write into -- into them.

22   BY MR. METCHO:

23        Q.     And you did not place any telephone

24   calls to Monarch at any time?

25        A.     I did not.

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

1      Q.      Not even to ask them if you could

2  dispute it verbally?

3      A.      No.

4      Q.      Paragraph 26 has an allegation of

5  suffering real harm.  Describe for me the real harm

6  that you suffered via the February 12, 2020,

7  letter?

8      A.      27 -- can you just scroll down a little

9  bit more?

10     Q.      Yeah, sure.

11             MR. ZELMAN:  Ron, are you referring to

12     Paragraph 26 or 27?  Because I think he said

13     27.

14             MR. METCHO:  Paragraph 26.  My

15     apologizes for not being more clear.

16             THE WITNESS:  26?

17  BY MR. METCHO:

18     Q.      Yes.  And my question was, describe for

19  me the real harm that you suffered as a result of

20  -- via the February 12, 2020, letter.

21     A.      Just not being able to dispute, you

22  know, a debt, you know, properly.  I mean, Monarch

23  only gave me the option of -- only -- you know, can

24  only do it in writing.

25     Q.      Okay.  I understand that.  But this is

Deposition of Sherwyn Rocke
Sherwyn Rocke v Monarch Recovery Management, Inc

```
1   alleging that you suffered harm as a result of that

2   alleged violation of the FDCPA.  What was the harm

3   you suffered?

4           MR. ZELMAN:  Objection.  He just

5       answered your question.  Asked and answered.

6           MR. METCHO:  It wasn't answered.  He

7       explained the violation, not harm that he

8       suffered.

9           MR. ZELMAN:  No.  He said that he

10      couldn't dispute a debt.  That's what he just

11      answered you.

12  BY MR. METCHO:

13      Q.    Okay.  I'll ask it in a series of

14  questions, then.  Were you harmed physically by

15  Monarch's collection?

16      A.    Not harmed physically.

17      Q.    Okay.  Did you seek any type of medical

18  assistance or take any type of medication?

19      A.    No.

20      Q.    Were you harmed financially by

21  Monarch's collection activity?

22      A.    I mean, it's affected me financially,

23  yeah.

24      Q.    How?

25      A.    It's -- it's, you know, a collection
```

Deposition of Sherwyn Rocke

1   letter that is -- you know, that is now on my

2   record.  And I'm trying to -- you know, it's --

3   wanted to dispute it, but it only gave me the

4   option to do it in writing.

5       Q.      What record is it on?

6       A.      I'm sorry?

7       Q.      You said the collection letter is on a

8   record -- your record.  What record is it on?

9       A.      No.  I'm saying it's -- as far as,

10  like, you know, my credit and that.

11      Q.      Are you aware that Monarch does not

12  credit report consumer debts?

13      A.      I'm not aware of that.

14      Q.      Okay.  Did you have to expend any money

15  as a result of your receipt of this letter?

16      A.      Can you explain?  What do you mean?

17      Q.      Yeah.  Did your receipt of this letter

18  cause you to spend any money?

19      A.      No.

20      Q.      Okay.  Did it cause you any loss of

21  sleep, for instance?

22      A.      No.

23      Q.      Okay.  Any emotional harm at all?

24      A.      Somewhat.

25      Q.      Can you describe that for me?

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
1        A.      I was kind of upset at the -- you know,
2   at the letter.
3        Q.      Okay.  How did it upset you?
4        A.      Like I said earlier, the balance was
5   just off.
6        Q.      Okay.  But the allegations in your
7   complaint don't pertain to the balance, they
8   pertain to -- or they -- excuse me.  They discuss
9   the alleged violation regarding your ability to
10  dispute the debt.  They have nothing to do with the
11  balance.  So my question is, did -- excuse me.
12  Specific language regarding disputing the debt
13  cause you any emotional harm?
14       A.      I would just -- I was just upset about
15  it.
16       Q.      Okay.  Did you discuss the letter with
17  anyone other than your attorneys?
18       A.      This letter that we're looking at?
19       Q.      Yeah.
20       A.      No.  The -- no.
21       Q.      Okay, all right.  Let's look at
22  Paragraph 27.  It says here, again, you were
23  harmed.  Were there any other harms that you
24  suffered as a result of your receipt in reading of
25  the February 12, 2020, letter?
```

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1        A.       Yeah.  I mean, it's -- it definitely,
 2   you know, affected me.
 3        Q.       Okay.  Can you describe for me how it
 4   affected you?
 5        A.       It basically affected me just, you
 6   know, the information, you know, and that
 7   paragraph, you know.  It only allowed me to, you
 8   know, do it in writing.  And it was just -- like I
 9   said, just misleading information.  So...
10        Q.       Okay.  It says farther down this
11   paragraph, that there was an increased risk of
12   material -- increased material risk of financial
13   harm.  Describe for me in your own words the
14   increased material risk of financial harm that
15   allegedly occurred as a result of your receipt and
16   reading the February 12, 2020, letter.
17        A.       I'm just trying to understand the
18   increased material -- can you just elaborate a
19   little bit?  I just want to make sure I answer it
20   properly.  I'm sorry.
21        Q.       I'm just trying to get an understanding
22   of the risk of financial harm that you allegedly
23   suffered via the February 12, 2020, letter.
24        A.       Financial harm, yeah.  You know, I
25   would say yeah, there was definitely financial
```

1    harm.

2         Q.     What was it?

3         A.     That was due to the -- you know, the

4    letter that I received.

5         Q.     What was the specific risk of financial

6    harm that you allege you suffered?

7         A.     The balance was incorrect.

8         Q.     What was the financial harm in relation

9    to the information regarding your ability to

10   dispute the debt?

11        A.     Like I said, I -- the financial harm

12   that, you know, it caused, it just -- you know, due

13   to, you know, information that was provided, you

14   know.  I couldn't properly, you know -- you know,

15   dispute, you know, what was in the letter.

16        Q.     Did you lose any money as a result of

17   your receipt and reading -- alleged receipt and

18   reading of the February 12, 2020, letter?

19        A.     No money was lost when I received it.

20        Q.     Okay.  Let's look at -- were you aware

21   that this class has been -- excuse me.  This

22   complaint has been brought as a class action

23   lawsuit?

24        A.     I'm aware.

25        Q.     And in your own words, what does that

Deposition of Sherwyn Rocke                Sherwyn Rocke v Monarch Recovery Management, Inc

1   mean, that it's been brought as a class action?

2        **A.**      A class action means that, you know,

3   there's other folks involved that were affected by

4   this.

5             MR. METCHO:  Yitchak, I believe in

6        Mr. Rocke's responses to the interrogatories,

7        that it was stated that he's not seeking actual

8        damages in this matter; is that still correct?

9             MR. ZELMAN:  Yeah.  We're not seeking

10        actual damages.

11             MR. METCHO:  So can we stipulate to it

12        on the record that you're not seeking actual

13        damages?

14             MR. ZELMAN:  Absolutely.

15             MR. METCHO:  Thank you.

16             MR. ZELMAN:  No problem.

17   BY MR. METCHO:

18        **Q.**      Let's look at Paragraph 45, Mr. Rocke.

19   It says here the defendant violated the FDCPA

20   Section 1692g by overshadowing plaintiff's

21   validation notice.

22             Okay.  What information or language or

23   what have you in the February 12, 2020, letter

24   overshadowed the validation notice?

25        **A.**      I would say the ability to dispute it.

1      Q.      I'm a bit confused by your answer.

2    Would you just elaborate on it, please?

3      A.      I'm just trying to --

4      Q.      Take your time.

5      A.      I'm sorry.  Can you just elaborate on

6    this one as well?

7      Q.      Sure.  So my question is, and you may

8    have answered it.  Let's just go through it one

9    more time.  You're alleging that there was some

10   certain aspect of the February 12, 2020, letter

11   that overshadowed the validation notice.  And my

12   question is, what aspect of the letter overshadowed

13   the validation notice?

14     A.      The validation, meaning like the

15   balance and just the validity of the letter?  Is

16   that --

17     Q.      Validation notice and I'll get the

18   consent from your attorney, too, is the portion of

19   the letter that gives you the option to dispute the

20   debt, okay.  So the question is, what portions,

21   what aspects of that February 12, 2020, letter

22   overshadowed the validation notice?

23            MR. ZELMAN:  Ron, do you want to show

24       the plaintiff the collection letter you're

25       referring to?  You're just breaking it up into

Deposition of Sherwyn Rocke          Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1        different parts that he may not have the

 2        understanding of.  That's all.

 3              MR. METCHO:  Not a problem.

 4              MR. ZELMAN:  I don't want to get in the

 5        way of your questioning.

 6              MR. METCHO:  No.  I understand.  That's

 7        fine.

 8   BY MR. METCHO:

 9        Q.    So this paragraph, Mr. Rocke, that we

10   read together earlier, this is the validation

11   notice, okay.  So my question is, what aspects of

12   this letter overshadowed this notice?

13              MR. METCHO:  Thanks, Yitzchak.  That

14        was helpful.

15              MR. ZELMAN:  Just when you have a

16        layman.  We're so used to this stuff.

17              THE WITNESS:  So that overshadowed the

18        third paragraph that I read?

19   BY MR. METCHO:

20        Q.    Yes.  The one beginning here where the

21   hand is.

22        A.    I mean, I would say the -- I mean,

23   everything that my issue was with that paragraph,

24   you know.  The balance, you know, jumped out at me.

25   That stood out.
```

Deposition of Sherwyn Rocke

1      Q.      Let's ask some other questions about --

2  regarding Monarch's activity.  Do you recall

3  receiving any telephone calls from Monarch

4  regarding First Premier Bank debt?

5      A.      I do not.

6      Q.      Okay.  I didn't hear the answer, I'm

7  sorry.  You do not recall receiving any calls from

8  Monarch?

9      A.      No.

10     Q.      I asked this earlier, just for the

11  clarity of the record, did you place any calls to

12  Monarch regarding the First Premier Bank debt?

13     A.      No.

14     Q.      And, again, just for clarity, did you

15  send any letters, any type of writing at all to

16  Monarch regarding this First Premier Bank debt?

17     A.      I did not.

18     Q.      You didn't send any writings to First

19  Premier Bank regarding debt?

20     A.      I did not.

21     Q.      Okay.  Did you place any telephone

22  calls to First Premier Bank regarding the debt?

23     A.      I did not.

24     Q.      Okay.  So you did not have any

25  conversations with anyone at Monarch regarding owed

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
 1   balance of the debt?

 2        A.      No.

 3        Q.      Or disputing the debt?

 4        A.      No.

 5        Q.      All right.  Is there -- we're coming

 6   towards the end here.  Just because it's an

 7   important part of the case, and I've asked this

 8   question several times.  But in your own words,

 9   explain the specific harm that you suffered as a

10   result of the receipt of this letter.

11             MR. ZELMAN:  I'm going to have to

12        object.  It's been asked and answered several

13        times at this point.

14   BY MR. METCHO:

15        Q.      You can answer if you're able.

16        A.      Yeah.  I think I've answered.

17        Q.      Excuse me?

18        A.      I believe I've answered the question.

19        Q.      You can answer it one more time, if

20   you're able.

21             MR. ZELMAN:  Sherwyn, do you have

22        anything to add to your previous answers?

23             THE WITNESS:  I do not.

24   BY MR. METCHO:

25        Q.      Okay.  Just give me -- Mr. Rocke, you
```

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

```
1    do admit you owe a debt obligation to First Premier

2    Bank?

3         A.      Yes.

4              MR. METCHO:  Okay, Mr. Rocke.  That's

5    all I have today.  I appreciate your time.

6              MR. ZELMAN:  Okay.  That's it.

7              THE COURT REPORTER:  Attorney Zelman,

8    you want an e-mailed version?

9              MR. ZELMAN:  Yes, please.

10                  (Witness excused.)

11             (Whereupon, the deposition was

12   concluded at 2:50 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

1                C E R T I F I C A T E

2

3            I, Stacy L. Rosar, Court Reporter and

4    Notary Public in and for the Commonwealth of

5    Pennsylvania, certify that the foregoing is a true

6    and accurate transcript of the deposition of said

7    witness, who was first duly sworn by me on the date

8    and place hereinbefore set forth.

9

10           I further certify that I am neither

11   attorney nor counsel for, nor related to or

12   employed by, any of the parties to the action in

13   which this deposition was taken, and further, that

14   I am not a relative or employee of any attorney or

15   counsel employed in this action, nor am I

16   financially interested in this case.

17

18

19

20

21

22           Stacy L. Rosar, Court Reporter
             Notary Public
23

24

25

Deposition of Sherwyn Rocke

Sherwyn Rocke v Monarch Recovery Management, Inc

## WORD INDEX

**< $ >**
**$895.77** *13:3*

**< 0 >**
**02124** *1:1  6:18*
**07712** *2:1*

**< 1 >**
**1:20-CV-11736-RWZ** *1:1*
**1:59** *1:1*
**100** *1:1  6:8, 17*
**105** *1:1*
**12** *3:11  9:16  10:3
19:25  22:24  23:7
25:6, 20  28:25  29:16,
23  30:18  31:23
32:10, 21*
**12th** *13:25  14:18
23:2*
**14** *10:15*
**15** *9:3  10:15*
**1692g** *31:20*
**17** *1:1*
**18431** *1:1*
**18503** *2:1*

**< 2 >**
**2:24** *22:17*
**2:30** *22:17*
**2:50** *36:12*
**20** *3:11  22:22*
**2020** *3:11  9:16  10:3
19:25  22:24  23:7
25:6, 20  28:25  29:16,
23  30:18  31:23
32:10, 21*
**2021** *1:1*
**220** *2:1*
**25** *23:3  24:12*
**26** *25:4, 12, 14, 16*
**27** *25:8, 12, 13  28:22*

**< 3 >**
**30** *16:4, 8, 14, 21*
**300** *2:1*
**305** *2:1*

**357.5236** *1:1*

**< 4 >**
**4** *3:5*
**45** *31:18*

**< 5 >**
**570** *1:1*

**< 6 >**
**600** *13:7*
**617-908-6970** *8:7*

**< 7 >**
**7** *6:20*
**701** *2:1*

**< 9 >**
**9** *3:11*
**9/14/81** *9:6*

**< A >**
**ability** *21:20  28:9
30:9  31:25*
**able** *24:17  25:21
35:15, 20*
**Absolutely** *31:14*
**account** *11:9, 14, 17,
21, 24  12:6, 9, 12, 17,
20  13:1*
**accurate** *13:4  37:6*
**accurately** *6:2*
**ACTION** *1:1  20:13
30:22  31:1, 2  37:12,
15*
**activity** *26:21  34:2*
**actual** *31:7, 10, 12*
**add** *35:22*
**address** *6:7, 15, 16
7:3  16:15  19:23, 24*
**administration** *8:18*
**admit** *36:1*
**afternoon** *4:12*
**age** *7:18*
**agent** *19:2*
**ago** *15:12, 13*
**agreed** *4:1*
**allegation** *5:3  25:4*
**allegations** *5:2  20:3*

**28:6**
**allege** *30:6*
**alleged** *26:2  28:9
30:17*
**allegedly** *29:15, 22*
**alleging** *26:1  32:9*
**allowed** *29:7*
**amount** *13:10*
**answer** *5:15  24:17,
18  29:19  32:1  34:6
35:15, 19*
**answered** *24:15  26:5,
6, 11  32:8  35:12, 16,
18*
**answering** *5:12, 14
6:2  24:2*
**answers** *35:22*
**apartment** *6:23, 24*
**apologizes** *25:15*
**appreciate** *36:5*
**approximate** *12:11
14:17*
**approximately** *11:11
13:22*
**Asbury** *2:1*
**asked** *15:14  24:14
26:5  34:10  35:7, 12*
**aspect** *32:10, 12*
**aspects** *32:21  33:11*
**assistance** *26:18*
**assume** *16:6*
**attorney** *21:6  32:18
36:7  37:11, 14*
**attorney/client** *21:7*
**attorneys** *21:12
28:17*
**August** *1:1*
**Ave** *6:8, 17*
**Avenue** *1:1  2:1  7:3*
**aware** *27:11, 13
30:20, 24*

**< B >**
**back** *10:8, 9  12:24
22:19  24:12*
**background** *4:25
8:12*
**balance** *12:16  13:3,
14  14:24  17:24  21:1,*

**16** *28:4, 7, 11  30:7
32:15  33:24  35:1*
**Bank** *11:5, 7  13:1
34:4, 12, 16, 19, 22
36:2*
**bankruptcy** *9:8*
**bar** *18:24, 25*
**basically** *29:5*
**Bay** *8:16*
**beginning** *1:1  33:20*
**begins** *15:21*
**behalf** *1:1*
**believe** *13:6, 9  15:2
17:24  31:5  35:18*
**birth** *9:4*
**bit** *18:16  25:9
29:19  32:1*
**body** *15:20*
**bottom** *19:24*
**break** *22:12, 13, 14,
15*
**breaking** *32:25*
**Brigham** *8:23*
**brought** *30:22  31:1*
**Business** *8:18, 25
12:2*

**< C >**
**call** *17:11, 18, 19, 20
24:8*
**called** *22:6  23:19*
**calls** *18:13  19:8
24:24  34:3, 7, 11, 22*
**card** *11:15*
**case** *35:7  37:16*
**cause** *27:18, 20  28:13*
**caused** *30:17*
**cell** *5:22  8:4*
**certain** *32:10*
**certification** *4:3*
**certify** *37:5, 10*
**children** *7:11, 13*
**Child's** *7:15*
**CIVIL** *1:1*
**clarification** *22:22*
**clarity** *34:11, 14*
**Class** *20:13  30:21,
22  31:1, 2*
**clear** *5:17  25:15*
**closer** *15:19*

Deposition of Sherwyn Rocke

Sherwyn Rocke v Monarch Recovery Management, Inc

**Collection**  3:*11*
14:*23*  15:*1, 3, 4, 16*
26:*15, 21, 25*  27:*7*
32:*24*
**college**  8:*13, 15*
**comes**  21:*10*
**coming**  35:*5*
**Commonwealth**  1:*1*
37:*4*
**communications**  21:*6*
**company**  15:*8, 10*
**Complaint**  3:*11*  5:*2*
10:*16*  20:*3, 13, 15, 20*
21:*16, 20*  22:*20*  28:*7*
30:*22*
**completing**  8:*13*
**concluded**  36:*12*
**conditions**  6:*1*
**confuse**  23:*11*
**confused**  23:*4, 6, 8,*
*17*  32:*1*
**consent**  32:*18*
**consumer**  16:*11*
27:*12*
**control**  19:*14, 18*
**conversations**  21:*9*
34:*25*
**copy**  16:*11, 12*
**correct**  7:*20*  13:*9*
19:*24*  21:*16*  31:*8*
**counsel**  4:*2*  5:*13*
9:*11*  37:*11, 15*
**couple**  12:*13*
**COURT**  1:*1*  4:*16*
5:*17*  36:*7*  37:*3, 22*
**credit**  11:*15*  27:*10,*
*12*
**creditor**  11:*3*  16:*16,*
*17*
**Crick**  21:*7*
**Crookman**  2:*1*
**current**  6:*15*  8:*1*
16:*17*
**Currently**  7:*7*  8:*13,*
*19*

< D >
**damages**  31:*8, 10, 13*
**date**  9:*4*  11:*10*
13:*20, 21*  14:*3, 4, 14,*

16, 17  22:*23*  23:*2*
37:*7*
**day**  20:*17*
**days**  16:*4, 8, 14, 21*
**debt**  11:*6*  15:*16*
16:*5, 7, 9, 10*  17:*1, 5,*
*6, 12, 23*  18:*5, 13*
21:*21*  22:*2, 6*  23:*24*
25:*22*  26:*10*  28:*10,*
*12*  30:*10*  32:*20*  34:*4,*
*12, 16, 19, 22*  35:*1, 3*
36:*1*
**debts**  27:*12*
**Defendant**  1:*1*  2:*1*
23:*3*  31:*19*
**definitely**  29:*1, 25*
**delinquent**  12:*20*
**deposed**  4:*21*
**deposition**  1:*1*  4:*20,*
*23*  5:*10, 22*  9:*12*
36:*11*  37:*6, 13*
**describe**  8:*11*  13:*12*
25:*5, 18*  27:*25*  29:*3,*
*13*
**DESCRIPTION**  3:*10*
**determination**  21:*19*
**determine**  20:*19, 24*
**determined**  21:*15*
**device**  5:*23*
**different**  5:*11*  15:*8*
16:*16*  33:*1*
**discrepancy**  13:*8*
**discuss**  28:*8, 16*
**discussion**  18:*17*
19:*19*
**dispute**  16:*5*  17:*1, 4,*
*6, 15, 16, 23*  18:*5, 13*
21:*21*  22:*2*  23:*5, 9,*
*14, 18*  24:*4*  25:*2, 21*
26:*10*  27:*3*  28:*10*
30:*10, 15*  31:*25*
32:*19*
**disputed**  16:*9*  22:*6*
**disputing**  17:*11*
23:*24*  28:*12*  35:*3*
**DISTRICT**  1:*1*  4:*16,*
*17*
**divulged**  21:*13*
**document**  20:*10*
**documents**  9:*14*

**Dorchester**  1:*1*  6:*8,*
*17*
**Drive**  1:*1*
**due**  30:*3, 12*
**duly**  4:*8*  37:*7*

< E >
**earlier**  15:*15*  21:*4*
28:*4*  33:*10*  34:*10*
**early**  22:*12*
**EDELSTEIN**  2:*1*
4:*14*
**educational**  8:*11*
**elaborate**  29:*18*  32:*2,*
*5*
**e-mailed**  36:*8*
**emotional**  27:*23*
28:*13*
**employed**  8:*19, 22*
37:*12, 15*
**employee**  37:*14*
**employment**  8:*24*
**entire**  5:*12*
**entirety**  14:*12*
**entities**  15:*4*
**entity**  15:*1*
**ESQUIRE**  2:*1*
**exact**  14:*16*  23:*2*
**EXAMINATION**
4:*10*
**examined**  4:*9*
**excuse**  28:*8, 11*
30:*21*  35:*17*
**excused**  36:*10*
**exhibit**  9:*16, 19, 20*
20:*5, 6*
**exhibits**  9:*12*
**expected**  21:*2*
**expend**  27:*14*
**Explain**  14:*21*  27:*16*
35:*9*
**explained**  26:*7*

< F >
**fact**  17:*4*
**far**  24:*10*  27:*9*
**farther**  29:*10*
**FDCPA**  26:*2*  31:*19*
**February**  3:*11*  9:*16*
10:*3*  13:*24, 25*  14:*18,*

19  19:*25*  22:*24*  23:*2,*
*7*  25:*6, 20*  28:*25*
29:*16, 23*  30:*18*
31:*23*  32:*10, 21*
**felt**  18:*9*
**file**  10:*1*  20:*20, 25*
21:*15, 19*
**filed**  4:*16*  9:*7*  15:*15*
**filing**  4:*4*
**financial**  29:*12, 14,*
*22, 24, 25*  30:*5, 8, 11*
**financially**  26:*20, 22*
37:*16*
**fine**  10:*20, 21*  18:*20*
33:*7*
**finished**  15:*24*
**first**  4:*8*  9:*15*  11:*5,*
*6*  12:*8, 25*  14:*25*
20:*24*  34:*4, 12, 16, 18,*
*22*  36:*1*  37:*7*
**five**  9:*14*
**five-minute**  22:*15*
**focus**  15:*20*
**folks**  31:*3*
**follows**  4:*9*
**food**  11:*25*
**foregoing**  37:*5*
**form**  4:*5*
**forth**  37:*8*
**front**  9:*23*
**full**  6:*10, 15*
**further**  37:*10, 13*

< G >
**gas**  11:*25*
**General**  8:*23*
**Give**  5:*13*  17:*10*
24:*8*  35:*25*
**given**  17:*1, 18, 19*
**gives**  32:*19*
**go**  4:*20*  8:*14*  20:*2*
32:*8*
**going**  4:*19, 24*  8:*20*
9:*11*  10:*14*  12:*21*
18:*16*  19:*13*  20:*4, 5*
35:*11*
**Good**  4:*12*  6:*9*
**great**  8:*14*
**greater**  17:*25*

Deposition of Sherwyn Rocke

guess  17:21  23:23

**< H >**
hand  33:21
happen  22:5
harm  25:5, 19  26:1,
2, 7  27:23  28:13
29:13, 14, 22, 24  30:1,
6, 8, 11  35:9
harmed  26:14, 16, 20
28:23
harms  28:23
head  5:16
hear  5:11  34:6
held  18:17  19:19
helpful  33:14
hereinbefore  37:8
higher  21:2
home  6:6, 23
Honesdale  1:1
Hopefully  4:18

**< I >**
ID  3:10
identification  9:21
20:7
important  35:7
incorrect  30:7
increased  29:11, 12,
14, 18
Individually  1:1
individuals  8:9
information  18:25
21:10, 11  29:6, 9
30:9, 13  31:22
instance  27:21
interested  37:16
interrogatories  31:6
involved  31:3
issue  5:1  9:17  33:23
its  14:11

**< J >**
Jersey  2:1
Jr  7:16, 17
judgment  16:11, 12
jumped  33:24

**< K >**

keep  10:13, 14, 19
18:16  19:13
kept  17:22  23:24
kind  28:1
know  12:22  15:23
16:2  17:11, 16, 17, 18,
19  18:1, 2, 6, 7, 9
21:2  22:1, 4  23:8, 9,
19  24:5, 6, 9, 10
25:22, 23  26:25  27:1,
2, 10  28:1  29:2, 6, 7,
8, 24  30:3, 12, 13, 14,
15  31:2  33:24
known  17:17, 19
23:18

**< L >**
language  28:12  31:22
late  14:19
lawsuit  4:16  15:15
20:25  30:23
layman  33:16
leave  10:22
left  19:24
letter  3:11  5:1  9:16,
23  10:3  11:1, 4
13:12, 15, 17  14:5, 6,
7, 8, 11, 15, 20, 21, 23,
25  15:19, 21  16:24,
25  17:2, 22, 25  18:12,
16, 22  19:12, 23
20:21  22:24  23:7
24:13, 20  25:7, 20
27:1, 7, 15, 17  28:2,
16, 18, 25  29:16, 23
30:4, 15, 18  31:23
32:10, 12, 15, 19, 21,
24  33:12  35:10
letters  10:1  15:4
23:22  34:15
listed  11:4  13:3
literally  23:12, 20
24:9, 20
little  15:19  25:8
29:19
live  6:22  7:2, 5, 20
19:2
lived  6:19  7:4
lives  6:21

living  7:3  19:25
LLC  2:1
located  6:5
locations  5:11
long  6:19  7:5  9:1
12:12  15:12
look  9:12, 15  15:18,
19  20:5  22:20  28:21
30:20  31:18
Looking  18:24  28:18
looks  19:5
lose  30:16
loss  27:20
lost  30:19

**< M >**
mail  16:12  23:21
MANAGEMENT  1:1
4:15
manager  8:25
MARCUS  2:1
MARGOLIS  2:1
4:14
mark  9:18  20:5
MARKED  3:8  9:20
20:6
married  7:7, 9
Mass  6:8, 17  7:4
8:16, 23
MASSACHUSETTS
1:1  4:17
material  29:12, 14, 18
matter  31:8
mean  16:19  22:7
23:12  24:5  25:22
26:22  27:16  29:1
31:1  33:22
meaning  32:14
means  31:2
medical  26:17
medication  5:25
26:18
mentioned  13:11
21:4  23:9
METCHO  2:1  3:5
4:11, 13  9:18, 22
10:2, 4, 11, 13, 16, 19,
24  18:15, 19  19:11,
15, 21  20:8  22:18
24:16, 22  25:14, 17

26:6, 12  31:5, 11, 15,
17  33:3, 6, 8, 13, 19
35:14, 24  36:4
Metcho@margolisedel
stein.com  2:1
MIDDLE  1:1  18:24
misleading  29:9
misled  23:4  24:13, 19
missed  12:22
Mobile  1:1
mom  7:21
MONARCH  1:1
4:15  13:16  15:1, 5, 6,
7  16:21  17:5, 23
18:13  19:8  20:4, 20,
25  22:7, 8  24:24
25:22  27:11  34:3, 8,
12, 16, 25
Monarch's  26:15, 21
34:2
money  27:14, 18
30:16, 19
months  7:6

**< N >**
name  4:12  6:10
7:15  15:10  16:15
names  6:12
neither  37:10
New  2:1
Notary  1:1  37:4, 22
note  17:22
notice  16:4, 8, 14, 22
31:21, 24  32:11, 13,
17, 22  33:11, 12
noticed  21:1
notification  23:5
notify  15:22  16:3, 7,
20
NUMBER  3:10  8:2,
4, 6, 8

**< O >**
oath  5:7
object  5:13  21:11
35:12
Objection  24:14  26:4
objections  4:4
obligation  36:1

Deposition of Sherwyn Rocke

obtain  16:10
occurred  29:15
office  4:14  16:3, 6, 7,
10, 13, 15
Okay  4:23, 24  5:4, 5,
9, 14, 21, 23, 25  6:4, 9,
14, 23, 25  7:2, 5, 7, 15,
23  9:4, 14  10:2, 7, 12,
22  11:3, 14  12:15
13:11, 17  14:8  15:12,
14, 18  16:18, 23  17:4,
10, 21  18:3, 11  19:3,
7, 11, 13  20:2, 19
21:3, 13, 14  22:1, 10
25:25  26:13, 17
27:14, 20, 23  28:3, 6,
16, 21  29:3, 10  30:20
31:22  32:20  33:11
34:6, 21, 24  35:25
36:4, 6
Once  15:6
online  19:1, 2
open  11:9, 18  12:12
14:5, 6
opened  14:7, 9
opportunity  5:13
17:1
option  18:2, 8, 10
22:3  23:13, 21  24:1,
8, 10, 20  25:23  27:4
32:19
options  19:4, 6
original  16:16
overshadowed  31:24
32:11, 12, 22  33:12,
17
overshadowing  31:20
owe  13:6  36:1
owed  12:16  13:14
14:24  17:25  34:25
owing  11:6

< P >
p.m  1:1  22:17  36:12
PAGE  3:4
paragraph  15:20, 21,
23, 25  16:19  22:22
23:3  24:12  25:4, 12,
14  28:22  29:7, 11

31:18  33:9, 18, 23
paragraphs  22:20
parent  7:21
Park  2:1
part  35:7
particular  11:1
parties  4:2  21:13
37:12
partner  4:13
parts  33:1
payment  12:16  19:6
payments  12:20, 22
Penn  2:1
Pennsylvania  1:1
2:1  4:14  37:5
perfectly  10:21
personal  9:7
pertain  14:22  21:5
28:7, 8
phone  5:22  8:4
19:2  23:19
physically  26:14, 16
place  18:12  19:7
24:23  34:11, 21  37:8
placed  5:7
Plaintiff  1:1  2:1
23:4  32:24
plaintiff's  31:20
please  5:14, 21  6:10,
15  7:15, 18  8:12
18:16  19:13  32:2
36:9
point  35:13
portion  16:6, 9  32:18
portions  32:20
position  8:24  9:2
possibly  22:2
postcard  17:23
Premier  11:5, 7  13:1
34:4, 12, 16, 19, 22
36:1
prevent  6:1
previous  35:22
primary  7:21
prior  7:2  9:12
privilege  21:8
privy  21:8
problem  31:16  33:3
properly  25:22

29:20  30:14
protected  21:7
provide  9:11  16:15
19:4
provided  18:25  30:13
Public  1:1  37:4, 22
pull  10:6
purchase  11:23  12:6
purchases  11:20
purposes  12:3

< Q >
question  4:5  5:12
17:21  18:3  19:22
20:23  21:5  23:23
24:3  25:18  26:5
28:11  32:7, 12, 20
33:11  35:8, 18
question-and-answer
4:24
QUESTIONED  3:4
questioning  33:5
questions  4:25  5:2,
15  26:14  34:1

< R >
read  14:8, 11, 14, 20
15:22, 25  16:1, 24
18:21  22:23  33:10,
18
reading  16:25  28:24
29:16  30:17, 18
real  25:5, 19
really  24:2
recall  11:6  12:23
14:16  15:10  34:2, 7
receipt  16:8, 24
27:15, 17  28:24
29:15  30:17  35:10
receive  13:17, 19
received  13:23  14:3
15:1, 3  16:24  18:21
20:21  22:23  30:4, 19
receiving  16:4, 14, 21
34:3, 7
recess  22:16
recognize  10:25
13:12  20:9
record  5:17  6:10, 14
18:18  19:20  22:19

27:2, 5, 8  31:12
34:11
recording  5:22, 23
RECOVERY  1:1
4:15  13:16
redaction  10:9
referring  25:11
32:25
refrain  5:21
regard  15:16
regarding  14:24
19:22  28:9, 12  30:9
34:2, 4, 12, 16, 19, 22,
25
related  11:14  37:11
relation  30:8
relative  37:14
remember  11:10, 11
12:7, 8, 14, 15, 18
13:21, 22  14:2  22:22
rent  6:25
repeat  20:22
repetitive  18:4
report  27:12
Reporter  1:1  5:18
36:7  37:3, 22
Representing  2:1
4:15
request  16:13
require  5:15
reserved  4:6
residential  8:1, 3
respective  4:2
responds  5:14
responses  31:6
result  25:19  26:1
27:15  28:24  29:15
30:16  35:10
right  9:10  10:16, 17
15:18  18:20, 22
21:17  23:3, 15  28:21
35:5
risk  29:11, 12, 14, 22
30:5
ROCKE  1:1  3:3
4:7, 12  6:5, 11  7:17
9:5, 24  10:25  18:21
19:23  20:9  21:4
31:18  33:9  35:25

Deposition of Sherwyn Rocke                    Sherwyn Rocke v Monarch Recovery Management, Inc

36:4
**Rocke's** 31:6
**Ron** 4:13  10:9
  19:14  25:11  32:23
**RONALD** 2:1
**room** 5:18
**roommates** 7:23
**Rosar** 1:1  37:3, 22

**< S >**
**Samuel** 7:16
**saw** 20:14
**saying** 27:9
**says** 19:1  23:1
  28:22  29:10  31:19
**scan** 19:1, 2
**school** 8:20
**Scranton** 2:1  4:13
**screen** 19:18
**scroll** 18:11, 15
  19:12  22:10  25:8
**scrolling** 10:13, 19
**sealing** 4:3
**Section** 31:20
**see** 10:5, 11  13:24
  22:10
**seek** 26:17
**seeking** 31:7, 9, 12
**send** 34:15, 18
**sending** 17:23
**sent** 10:1  13:13, 14,
  15
**separate** 9:14
**series** 26:13
**session** 4:24
**set** 37:8
**Seven** 7:19
**shaking** 5:16
**share** 8:8  19:17
**SHERWYN** 1:1  3:3
  4:7  6:11  7:16  35:21
**show** 32:23
**signing** 4:3
**similarly** 1:1
**simply** 4:23
**sir** 6:13
**situated** 1:1
**six** 7:6
**sleep** 27:21
**Somewhat** 27:24

**Sorry** 7:16  10:6
  15:7  18:3  19:13
  20:22  27:6  29:20
  32:5  34:7
**sought** 17:25
**specific** 13:20, 21
  14:2, 4, 14  22:23
  28:12  30:5  35:9
**specifically** 6:4  23:6
**spend** 27:18
**Stacy** 1:1  9:18  37:3,
  22
**Stacy715@gmail.com**
  1:1
**stamps** 23:21  24:7
**started** 6:9
**state** 6:10, 15
**stated** 31:7
**STATES** 1:1  4:16
**stating** 23:4
**stays** 21:12
**stipulate** 31:11
**stipulated** 4:1
**stood** 33:25
**Stoughton** 7:4
**studying** 8:17
**stuff** 23:22  24:7
  33:16
**suffered** 25:6, 19
  26:1, 3, 8  28:24
  29:23  30:6  35:9
**suffering** 6:1  25:5
**Suite** 2:1
**Summit** 1:1
**sure** 5:11  20:24
  21:9, 10, 11  25:10
  29:19  32:7
**surrounding** 5:3
**Suzanne** 19:11
**sworn** 4:8  37:7

**< T >**
**take** 4:18  9:15
  15:18  20:4  22:14, 15,
  19  26:18  32:4
**taken** 22:16  37:13
**talk** 9:10
**telephone** 8:2, 3, 8
  17:10  18:12  19:1, 7
  24:23  34:3, 21

**tell** 11:3  12:19  22:8
  23:5
**testified** 4:9  14:20
  16:23  17:24  18:21
  22:21
**thank** 18:20  31:15
**Thanks** 4:17  33:13
**thereof** 16:6, 9
**thing** 24:9
**things** 5:16  11:23,
  25  21:3
**think** 9:25  10:2
  13:8  20:22  22:5
  25:12  35:16
**third** 15:21  33:18
**time** 4:6, 19  7:22
  12:5, 8, 11, 15, 23
  19:8  20:14  24:24
  32:4, 9  35:19  36:5
**times** 35:8, 13
**today** 4:18, 20  5:4,
  10, 19  6:2, 5  36:5
**today's** 5:22  9:12
**told** 21:24
**transcript** 37:6
**trial** 4:6
**true** 37:5
**truthfully** 6:2
**trying** 27:2  29:17,
  21  32:3
**Tuesday** 1:1
**two** 7:24  9:25  10:8
**type** 5:23  26:17, 18
  34:15
**types** 11:23

**< U >**
**um-hmm** 5:16
**understand** 5:6
  16:25  25:25  29:17
  33:6
**understanding** 29:21
  33:2
**UNITED** 1:1  4:16
**upset** 28:1, 3, 14
**use** 10:20  12:2, 25

**< V >**
**valid** 16:7

**validation** 31:21, 24
  32:11, 13, 14, 17, 22
  33:10
**validity** 16:5  32:15
**verbally** 25:2
**verification** 16:10, 12
**version** 36:8
**Videoconference** 1:1
**violated** 31:19
**violation** 26:2, 7  28:9
**vs** 1:1

**< W >**
**waived** 4:4
**want** 10:19  15:20
  22:14  29:19  32:23
  33:4  36:8
**wanted** 18:8  19:5
  20:20, 25  21:15  27:3
**water** 22:13
**way** 5:4  22:2  33:5
**week** 20:17, 18
**well** 12:21  15:6  32:6
**we're** 4:19  5:9, 10
  20:5  22:19  28:18
  31:9  33:16  35:5
**WITNESS** 3:3  10:12
  24:19  25:16  33:17
  35:23  36:10  37:7
**Woodrow** 1:1  6:8,
  17  7:3
**words** 14:21  16:18
  19:3  29:13  30:25
  35:8
**working** 9:1
**write** 18:2, 4, 7  24:6,
  21
**writing** 16:4, 8, 13, 21
  17:9, 14, 15, 17, 22
  21:25  22:4  23:5, 10,
  14, 24  24:4, 11  25:24
  27:4  29:8  34:15
**writings** 34:18

**< Y >**
**Yeah** 10:8, 12, 18
  15:2, 9  16:1  20:18
  22:8  23:20  24:19
  25:10  26:23  27:17

Deposition of Sherwyn Rocke

28:*19*  29:*1, 24, 25*
31:*9*  35:*16*
**years**  6:*20*  7:*24*  9:*3*
12:*13, 23*
**YITCHAK**  2:*1*  31:*5*
**Yitzchak**  33:*13*
**Yzelman@marcuszelm**
**an.com**  2:*1*

< **Z** >
**ZELMAN**  2:*1*  9:*25*
10:*8, 15, 18, 22*  19:*14,*
*17*  21:*6, 10*  24:*14, 18*
25:*11*  26:*4, 9*  31:*9,*
*14, 16*  32:*23*  33:*4, 15*
35:*11, 21*  36:*6, 7, 9*
**ZOOM**  2:*1*  5:*10*